# M. J. SOLUM v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

## May 19, 1916.

## Nos. 19,684—(5).

**Carrier — freight rate over cheaper line governs.**

1. Where a railway company operates two lines of railroad between the same points and the freight rate over one line is less than over the other, if other conditions are reasonably equal, it is the duty of the company to transport shipments between those points over the line which will give the shipper the benefit of the cheaper rate.

**Carrier — charge of higher rate — when.**

2. To justify carrying such shipments over the other line and thereby compel the shipper to pay the higher rate, the company must show that he selected such line, or that a proper regard for his interests required the shipment to be made over it.

**Cashman distance tariff act lawful.**

3. The rates prescribed by chapter 232, Laws of 1907, were the lawful rates for transporting intrastate shipments from the time that act declared such rates to be in effect, notwithstanding the fact that the enforcement thereof had been enjoined for a time.

**Carrier — duty to carrier pending litigation over distance tariff act.**

4. Defendant having both an intrastate line and an interstate line, over either of which it could have transported plaintiff's shipments, and the lawful rate over the intrastate line being less than over the interstate line, defendant was not relieved from the duty of transporting

[1]Reported in 157 N. W. 996.

such shipments over the intrastate line, and thereby giving plaintiff an opportunity to secure the benefit of the intrastate rate, by the fact that the validity of such rate was in litigation and its enforcement enjoined at the time of the shipment and until the judgment of the United States Supreme Court established its validity and annulled such injunction.

**Same.**

5. Where it was entirely feasible and practicable to transport such shipments over the intrastate line, the fact that owing to easier grades it was more economical to transport them over the intrastate line did not justify defendant in disregarding plaintiff's right to have them transported over the intrastate line.

**Action to recover excessive freight charge.**

6. Plaintiff's cause of action is based on the common law and is not affected by the Federal statute regulating interstate commerce.

Action in the district court for Ramsey county to recover $224.89, overpayments to defendant upon 14 carloads of coal transported by defendant over its railroad from Duluth to Hitterdal. The substance of the defense is contained in the first paragraph of the opinion. Plaintiff's demurrer to the answer was sustained, Hanft, J. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*Charles W. Bunn* and *Charles Donnelly,* for appellant.

*Lyndon A. Smith,* Attorney General, and *Henry C. Flannery,* Assistant Attorney General, for respondent.

TAYLOR, C.

The Pittsburgh Coal Company and the Zenith Furnace Company delivered 14 carloads of coal to defendant at Duluth, Minnesota, to be transported over defendant's railroad from Duluth, Minnesota to Hitterdal, Minnesota, and there to be delivered to plaintiff, the consignee thereof. Defendant owned and operated two lines of railroad running out of Duluth, over either of which it could have transported the coal from Duluth to Hitterdal. One of these lines, 228.1 miles in length, was wholly within the state of Minnesota, and the legal rate for such shipments over that line, as fixed by the state statute (chapter 232, p. 313, Laws 1907), was $1.28 per ton. The other line, 234.7 miles in

length, ran through the state of Wisconsin for a distance of 11.7 miles, and the legal rate for such shipments over this line, as fixed by tariffs filed with the Interstate Commerce Comimssion, was two dollars per ton. Defendant, having received no instructions as to the line over which the coal should be shipped, transported it over the interstate line and exacted and collected from plaintiff two dollars per ton for such transportation. Plaintiff brought this action to recover damages in the amount of the excess paid by him over and above the rate fixed by the state statute for transporting such shipments over the intrastate line. Defendant answered, asserting that the shipments were made in interstate commerce and were subject to the interstate rate. Plaintiff demurred to the answer, and the demurrer was sustained. Defendant declined to plead further, and judgment was rendered for plaintiff. Defendant appealed.

Defendant does not question that plaintiff would be entitled to recover, if the shipments in controversy had been transported over the line which is wholly within Minnesota; but contends that he is not entitled to recover for the reason that the shipments were actually trasported over the line which passed through Wisconsin and therefore were subject to the interstate rates established for such shipments.

Where more than one mode or route of transportation is available, the duty of the carrier is stated in 2 Hutchinson on Carriers (3d ed.), § 615, as follows:

"Where a contract for the transportation of goods gives the carrier an option between modes of transportation, this option must be exercised with regard for the interests of the shipper. To exercise the option to the disadvantage of the shipper, unless it is done in good faith and under circumstances which seem to require it, will be a breach of the contract; and the burden of proof will be upon the carrier to show that he exercised the option reasonably under the circumstances. Thus if the carrier should adopt a mode of transportation which involved the payment of a higher rate of freight than a lower one, he must show, in order to justify his act, either that he asked for and obtained directions from the shipper or consignee to employ the more expensive mode, or that because of his inability to procure the means of shipment by the cheaper mode, it was reasonably necessary, in view of the exigencies of the particular case, to resort to the other and more expensive mode."

See also Stewart v. Comer, 100 Ga. 754, 28 S. E. 461, 62 Am. St. 353; Alabama G. S. R. Co. v. McKenzie, 139 Ga. 410, 77 S. E. 647, 45 L.R.A. (N.S.) 18; Fisher v. Boston & M. R. Co. 99 Me. 338, 59 Atl. 532, 68 L.R.A. 390, 105 Am. St. 283; Blitz v. Union Steamboat Co. 51 Mich. 558, 17 N. W. 55; Gulf C. & S. F. Ry. Co. v. Irvine & Woods (Tex. Civ. App.) 73 S. W. 540.

Where a railroad company operates two lines of railroad between the same points, and the freight rate over one line is less than such rate over the other line, if other conditions are reasonably equal, it is the duty of the company to transport shipments between those points over the line which will give the shipper the benefit of the cheaper rate. To justify transporting such shipments over the other line and thereby compel the shipper to pay the higher rate, the company must show that such line was chosen by the shipper or that the circumstances or exigencies were such that a proper regard for the interests of the shipper precluded the use of the cheaper line. In the present case, the intrastate line was slightly shorter and more direct than the interstate line, and there is no claim that it was not equally safe and expeditious. Consequently it is unnecessary to consider, at this time, when a selection of the more expensive line would be justified on the ground that it was safer, or more direct, or more expeditious.

Defendant contends that, at the time the shipments in question were made, the rate was the same over both lines, and that, for this reason, it is not chargeable with having selected an expensive route when a cheaper one was available. The basis for this contention is that the United States Circuit Court had enjoined defendant from putting into effect the rates prescribed by the state statute, on the ground that such rates were confiscatory and invalid; that while such injunction was in force defendant charged and collected the same rates over both lines, and that the shipments in controversy were made while such injunction was in force. The injunction case went to the United States Supreme Court, and that court held that the state statute and the rates prescribed thereby were valid, and dissolved the injunction. That the state had the power to, and did, establish such rates is now beyond question. As the state statute was a valid exercise of the legislative power, it necessarily follows that the rates prescribed therein have been the lawful rates from the time

that the statute declared they should go into effect. It also follows that at the time the shipments in controversy were made the lawful rate over the intrastate line was 72 cents per ton less than the lawful rate over the interstate line. The fact that defendant was legally but erroneously restrained, for a time, from putting such rate into effect did not operate to make the rate unlawful or invalid during such period, nor entitle defendant to retain the excess above the lawful rate, which it had collected by virtue of the erroneous injunction. Defendant knew that the state was striving to have the injunction annulled as not justified by the facts, and a proper regard for the interests of plaintiff required it to secure to him the benefit of whatever advantage might accrue from transporting the shipments over the intrastate line.

Defendant also contends that it had the right to select the interstate route for the reason that, generally, it hauled freight shipped out of Duluth over that line, and freight shipped into Duluth over the intrastate line, on account of the difference in grades between the two lines. There is no showing and no claim that it was not entirely feasible and practicable to haul freight shipped out of Duluth over the intrastate line. In fact that line was constructed first, and all freight, whether in or out bound, was hauled over it until the construction of the interstate line several years later. Although on account of easier grades it was more economical to haul out-bound shipments over the interstate line, yet, so long as it was entirely feasible and practicable to haul such shipments over the intrastate line, defendant was not justified in serving its own interest at the expense of plaintiff.

It is also contended that the case here presented is one of misrouting, over which the Interstate Commerce Commission has exclusive jurisdiction. We find no question involving any right given, regulated or controlled by the Federal law. Plaintiff was entitled to have his coal carried over the intrastate route, and seeks to recover the damages he sustained by defendant's failure to carry it over that route. His right of action rests upon the common law, not upon the Federal statute, and we fail to find any question requiring solution by the Interstate Commerce Commission. See Pennsylvania R. Co v. Puritan Coal Mining Co. 237 U. S. 121, 35 Sup. Ct. 484, 59 L. ed. 867.

Judgment affirmed.